UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH P WYNNE,<br><br>    Plaintiff,<br><br>    v.<br><br>PATRICIA ARTEAGA,<br><br>    Defendant. | Case No. 23-cv-02365-DMR<br><br>**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 26 |

Plaintiff Elizabeth P. Wynne filed the complaint on May 15, 2023. She alleges that Defendant Patricia Arteaga also known as Alma Cazares committed identify theft by stealing, receiving, and/or unlawfully obtaining her social security number ("SSN"). Plaintiff now moves for summary judgment. [Docket No 26 ("Mot.").] The court held a hearing on January 25, 2024. For the following reasons, Plaintiff's motion is denied.

In her opposition brief, Defendant requests that the court grant summary judgment in her favor *sua sponte*. [Docket No. 29 ("Opp'n") at 1.] Defendant had the ability to file a cross-motion for summary judgment but chose not to do so. In addition, discovery is open until March 26, 2024, which means Plaintiff can develop more facts which may address the deficiencies identified in this order. The court therefore declines Defendant's invitation to consider granting summary judgment in her favor.

**I.    BACKGROUND**

The parties do not dispute the central facts in this case. *See* Opp'n at 1. In June 2008, Defendant secured a mortgage from Wells Fargo Home Mortgage ("Wells Fargo") in the amount of $144,352.52 to purchase a house in Utah. [*See* Docket No. 26-1 (George R. Nemiroff Decl., Dec. 1, 2023) ¶ 2, Ex. 1 (Arteaga's Wells Fargo mortgage application).] As part of her mortgage application, Defendant used Plaintiff's SSN on various documents submitted to Wells Fargo. *Id.*

Plaintiff's SSN is also associated with Defendant as reflected in Defendant's credit reports. Nemiroff Decl. ¶¶ 4-5, Exs. 5 (copy of Equifax's Consumer Credit Report for Alma Cazares), 6 (copy of TransUnion's Consumer Credit Report for Alma Cazares).

The complaint states six claims related to Defendant's identity theft: 1) conversion; 2) receiving stolen property in violation of California Penal Code § 496; 3) violation of privacy; 4) violation of the California Constitutional right to privacy; 5) violation of the California Information Practices Act (Civil Code § 1798.53); and 6) intentional infliction of emotional distress.

## II.   LEGAL STANDARDS

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The court must view the evidence in the light most favorable to the non-moving party. *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A genuine factual issue exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could return a verdict for the nonmoving party. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248). The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*, 477 U.S. at 255).

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must point to specific facts, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of material fact exists. *Devereaux*, 263 F.3d at 1076. More than a "scintilla of evidence" must exist to support the non-moving party's claims. *Pomona*, 750 F.3d at 1049 (quoting *Anderson*, 477 U.S. at 252). A showing that "there is some 'metaphysical doubt' as to the material facts as issue"

will not suffice. *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita*, 475 U.S. at 587).

**III.    DISCUSSION**

    **A.    Adverse Inference Based on Defendant's Assertion of the Fifth Amendment Privilege**

As an initial matter, Plaintiff notes that Defendant asserted the Fifth Amendment privilege against self-incrimination in response to the vast majority of her discovery requests. Mot. at 3-7. On June 28, 2023, Plaintiff propounded requests for production, interrogatories, and requests for admission. *Id.* at 3-4. Defendant served her discovery responses to all three sets of requests on July 31, 2023. *Id.*; Nemiroff Decl., Exs. 2-4. Plaintiff highlights that Defendant asserted her Fifth Amendment right against self-incrimination in response to all but two discovery requests. *Id.* at 4-7 (summarizing Defendant's discovery responses); *see also* Nemiroff Decl., Exs. 2-4 (Defendant's discovery responses). Plaintiff argues that Defendant's invocation of the Fifth Amendment should result in an adverse inference that Defendant committed identify theft by unlawfully obtaining and using Plaintiff's SSN.[1] Mot. at 9.

As Plaintiff points out, "[p]arties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof." *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998). The seminal case is *Baxter v. Palmigiano*, 425 U.S. 308, which held that adverse inferences based on a party's invocation of the Fifth Amendment are permissible in certain situations. The "prevailing rule," endorsed by *Baxter*, is that the court may draw an

---

[1] This portion of Plaintiff's brief asks the court to draw the specific adverse inference that Defendant committed identity theft by unlawfully obtaining and using Plaintiff's SSN. Mot. at 9. In other parts of the brief and on reply, Plaintiff appears to ask the court to draw several other inferences. *See, e.g.*, Mot. at 16 (in the context of IIED claim, asking the court to draw the adverse inference that Defendant "recklessly used" Plaintiff's SSN, and that "such use was a substantial factor in causing Plaintiff emotional distress"); Reply at 8 (arguing the court should make an adverse inference that Defendant acquired Plaintiff's SSN in California). The court addresses these additional requests where relevant to its analysis.

3

adverse inference when "1) the information withheld would have been unfavorable to a party when the surrounding circumstances would normally compel an innocent person to respond to the allegations brought against him, and (2) the proponent of the adverse inference offers additional evidence against that party." *Cisco Sys., Inc. v. Sheikh*, No. 4:18-CV-07602-YGR, 2020 WL 5877573, at *5 (N.D. Cal. Oct. 2, 2020); *see also Colello*, 139 F.3d at 677-78 (there must be "evidence in addition to the adverse inference to support a court's ruling"); *Doe v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) ("an adverse inference can be drawn when silence is countered by *independent evidence* of the fact being questioned").[2] "[T]he burden remains on the proponent of a fact to 'come forward with evidence to support the allegation, otherwise no negative inference will be permitted.'" *KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 902 (N.D. Cal. 2010) (quoting *Glanzer*, 232 F.3d at 1264).

In determining whether to draw a particular adverse inference, the court must examine the question to which the invoking party asserted the Fifth Amendment privilege. This is because "[i]n a civil case, the Fifth Amendment's protections against self-incrimination are invoked on a question-by-question basis . . . and therefore the assertion of the privilege necessarily attaches only to the question being asked and the information sought by that particular question." *Glanzer*, 232 F.3d at 1265; *see also Gonzales v. City of San Jose*, 2015 WL 7878121, at *6 (N.D. Cal. Dec. 4, 2015) ("[T]he scope of an adverse inference instruction cannot be limitless; rather, it must be tethered to the specific questions asked but not answered.").[3]

---

[2] The court has discretion to impose various remedies where a party asserts the Fifth Amendment in response to a discovery request. *Colello*, 139 F.3d at 677 (explaining courts are free to fashion whatever remedy is required to prevent unfairness). Here, the only remedy sought by Plaintiff is the imposition of adverse factual inferences.

[3] The Ninth Circuit provided a hypothetical to illustrate the point:

> Within a civil suit, a defendant is asked the question "did you ever pick up the gun?" The defendant refuses to answer asserting his Fifth Amendment privilege. The plaintiff then introduces into evidence the fact that defendant's fingerprints were found on the gun. The jury then may be instructed that from defendant's silence, it can infer that defendant picked up the gun. However, it cannot be instructed that it can infer from defendant's refusal to answer that particular question, that the defendant fired the gun, or that he disposed of the gun at the

4

1  Finally, "[n]o negative inference can be drawn against a civil litigant's assertion of his
2  privilege against self-incrimination unless there is a substantial need for the information and there
3  is not another less burdensome way of obtaining that information." *Glanzer*, 232 F.3d at 1265.
4  In this case, Plaintiff seeks an adverse inference that Defendant committed identify theft by
5  unlawfully obtaining and using Plaintiff's SSN. Mot. at 9. In support, Plaintiff argues that her
6  discovery requests were "comprehensive and fundamental to the issue of Plaintiff's ownership of
7  her SSN and Defendant's unlawful use of it." *Id.* at 10. For example, Plaintiff asked Defendant to
8  produce "All DOCUMENTS showing every time YOU have represented [Plaintiff's] Social
9  Security Number . . . as YOUR own." Nemiroff Decl., Ex. 2 at 4 (Request for Production No. 3).
10 Plaintiff also asked Defendant to "[e]xplain in detail how YOU received [Plaintiff's] Social
11 Security Number[.]" *Id.*, Ex. 3 at 6 (Interrogatory No. 9). In response to these and other relevant
12 requests, Defendant invoked the Fifth Amendment.
13 Viewed together, the questions are specific enough to support an inference that, had she
14 not invoked the Fifth Amendment, Defendant's response would reveal that she stole Plaintiff's
15 SSN and used it as her own. In addition, Plaintiff provides the required independent evidence to
16 support the requested adverse inference. She points to records she obtained from Wells Fargo
17 showing that Defendant used Plaintiff's SSN to secure a home loan in June 2008, *see* Nemiroff
18 Decl. ¶ 2, Ex. 1, as well as consumer credit reports for Defendant created and maintained by credit
19 bureaus Equifax and TransUnion which reflect the last four digits of Plaintiff's SSN. *See id.* ¶¶ 4-
20 5, Exs. 5-6.
21 Defendant's opposition brief does not address her assertion of the Fifth Amendment
22 privilege or otherwise respond to Plaintiff's arguments in this respect. *See* Opp'n at 1.
23 For these reasons, it is appropriate for the court to make the adverse factual inference that

---

> crime scene. That would be constructing an inference on another inference. These other inferences could only come into play if the specific questions pertaining to such inferences are asked, are met with a Fifth Amendment privilege response, and are corroborated by other evidence to the specific fact being questioned.

*Glanzer*, 232 F.3d at 1266, n.2.

1  Defendant committed identify theft by unlawfully obtaining and using Plaintiff's SSN.

2  **B.     Evaluation of Plaintiff's Motion for Summary Judgment**

3  **1.     Conversion**

To establish a conversion claim, Plaintiff must show 1) ownership or right to possession of the property; 2) Defendant's wrongful disposition of Plaintiff's property right; and 3) damages. *J & J Sports Prods. v. Coyne*, 857 F. Supp. 2d 909, 918 (N.D. Cal. 2012) (citing *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv. Inc.*, 958 F.2d 896, 906 (9th Cir. 1992)); *see also Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003). "Although conversion generally applies to tangible property, recent court decisions have recognized intangible property such as the exclusive distribution rights over a program may be capable of being converted." *Id.*

Defendant opposes summary judgment on this claim for two reasons. She asserts that Plaintiff's conversion claim is barred by the applicable statute of limitations. She also argues that "personal information," such as a social security number cannot support a claim for conversion because it does not constitute "property." Opp'n at 2. As discussed below, the court finds that Plaintiff's claim is time-barred on the current record, and therefore does not reach Defendant's other argument.

Conversion carries a three-year limitations period. *See* Cal. Code Civ. Proc. § 338(c); *Garcia v. Coleman*, No. C-07-2279 EMC, 2008 WL 4166854, at *10 (N.D. Cal. Sept. 8, 2008). Defendant argues Plaintiff's conversion claim is time-barred because the statute of limitations began to run on June 3, 2008, when Defendant used Plaintiff's SSN. Opp'n at 3-4. Plaintiff does not dispute that she failed to assert her conversion claim within a three-year period; instead, she contends that the discovery rule tolled the statute of limitations. [Docket No. 30 ("Reply") at 7-8.] Plaintiff explains she first became aware that her SSN had been stolen when she ran a credit report in March 2022. Reply at 7 (citing Wynne Decl. ¶ 8). According to Plaintiff, the statute of limitations on her conversion claim did not start to run until March 2022. *Id.*

The discovery rule permits a plaintiff to demonstrate that the statute of limitations began running when the plaintiff discovered the injury rather than when the injury occurred. *Lyons v. Michael & Associates*, 824 F.3d 1169, 1173 (9th Cir. 2016). Under the discovery rule, "a

6

1    limitations period begins to run when the plaintiff knows or has reason to know of the injury
2    which is the basis of the action." *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th
3    Cir. 2009) (internal quotation marks and citations omitted).

4        Plaintiff's argument fails to consider that "[t]o the extent there is a discovery rule for
5    conversion claims under California law, it appears to be limited in nature." *Garcia v. Coleman*,
6    No. C-07-2279 EMC, 2008 WL 4166854, at *10-*12 (N.D. Cal. Sept. 8, 2008). As Defendant
7    points out, the rule is applicable "only . . . when the defendant in a conversion action fraudulently
8    conceals the relevant facts or where the defendant fails to disclose such facts in violation of his or
9    her fiduciary duty to the plaintiff. In those instances, 'the statute of limitations does not
10   commence to run until the aggrieved party discovers or ought to have discovered the existence of
11   the cause of action for conversion.'" *AmerUS Life Ins. Co. v. Bank of Am., N.A.,* 143 Cal. App.
12   4th 631, 639 (2006) (quoting *Strasberg v. Odyssey Group*, 51 Cal. App. 4th 906, 916-17). "The
13   alleged fraudulent concealment "must consist of affirmative acts or representations designed to
14   prevent discovery of the cause of action.'" *Cassis v. Sun Life Assurance Co. of Canada (U.S.)*,
15   No. SACV170148DOCKESX, 2018 WL 1358971, at *14 (C.D. Cal. Jan. 18, 2018) (quoting
16   *Scafidi v. Western Loan & Bldg. Co.*, 72 Cal. App. 2d 550, 563)).

17       Plaintiff argues she is not required to show fraudulent concealment because "Defendant
18   committed a crime in unlawfully obtaining Plaintiff's SSN[.]" Reply at 7. Plaintiff does not cite
19   any authority to support this conclusory statement.

20       Plaintiff also asks the court to make the adverse inference that Defendant fraudulently
21   concealed Plaintiff's SSN based on Defendant's assertion of the Fifth Amendment in response to
22   two interrogatories: 1) whether Defendant knew who the SSN belonged to; and 2) if so, how she
23   knew who the SSN belonged to. Reply at 7-8 (citing Nemiroff Decl., Ex. 3 at 7 (Interrogatory
24   Nos. 12, 13)). Plaintiff also asked Defendant to admit that when she used the SSN, she knew it
25   was not hers. *Id.* (citing Nemiroff Decl., Ex. 4 at 5 (Request for Admission No. 8)). Defendant
26   invoked the Fifth Amendment privilege in response to each of the requests.

27       As discussed above, the assertion of the Fifth Amendment in response to Plaintiff's
28   discovery requests supports an adverse inference that Defendant unlawfully obtained and used

7

1   Plaintiff's SSN.  However, Defendant's refusal to answer does not support an inference that

2   Defendant made affirmative acts or misrepresentations designed to prevent discovery of her theft

3   of Plaintiff's SSN.  *See Gonzales*, 2015 WL 7878121, at *6 (adverse inference must be "tethered

4   to the specific questions asked but not answered.").  The discovery requests cited by Plaintiff do

5   not ask Defendant about acts taken or representations made to hide the fact that she stole

6   Plaintiff's SSN.  This result is bolstered by Plaintiff's failure to come forward with the required

7   independent evidence of fraudulent concealment.  *See Glanzer*, 232 F.3d at 1264.

8         In sum, Plaintiff has not established that the statute of limitations for the conversion claim

9   should be tolled based on fraudulent concealment.  *See Garcia v. Coleman*, No. C-07-2279 EMC,

10  2008 WL 4166854, at *10-*12 (N.D. Cal. Sept. 8, 2008) (finding statute of limitations for

11  conversion claim was not tolled where it was undisputed that defendants had not made any

12  affirmative misrepresentations to plaintiff, and no reasonable jury could find the parties had a

13  confidential or fiduciary relationship).  Although the conversion claim is time-barred on the

14  current record, discovery is still open.  It is therefore possible for Plaintiff to provide evidence of

15  fraudulent concealment.[4]  Accordingly, the court denies Plaintiff's motion for summary judgment

16  on the conversion claim but declines to grant summary judgment for Defendant.

17
      **2.**      **California Penal Code § 496, Invasion of Privacy under the California Constitution, and California's Information Practices Act**
18

19        Plaintiff brings three claims based on California statutes and the California Constitution: 1)

20  receiving stolen property in violation of California Penal Code § 496; 2) violation of California's

21  constitutional right to privacy; and 3) violation of the California Information Practices Act (Civil

22  Code § 1798.53).  Defendant argues all three claims should fail due to inappropriate

23  extraterritorial application of California statutes and constitution.

24        In general, there is a presumption that the "Legislature did not intend a statute to be

25  operative, with respect to occurrences outside the state, . . . unless such intention is clearly

26  expressed or reasonably to be inferred from the language of the act or from its purpose, subject

27

28  [4] The parties are reminded of the court's admonition that each side may only file one Rule 56 motion.  Plaintiff is therefore prohibited from filing another summary judgment motion.

matter or history." *Sullivan v. Oracle Corporation*, 51 Cal. 4th 1191, 1207 (2011); *see also N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916) ("[o]rdinarily the statutes of a state have no force beyond its boundaries."). "To evaluate whether a claim seeks to apply the force of a state statute beyond the state's boundaries, courts consider where the conduct that 'creates liability' under the statute occurs." *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018) (citing *Sullivan*, 51 Cal. 4th at 1208). "If the conduct that 'creates liability' occurs in California, California law properly governs that conduct." *Id.* (quoting *Sullivan*, 51 Cal. 4th at 1208). "By contrast, if the liability-creating conduct occurs outside of California, California law generally should not govern that conduct . . . unless the Legislature explicitly indicates otherwise[.]" *Id.* (citing *Sullivan*, 51 Cal. 4th at 1208). "Ordinarily, [r]ules of construction and interpretation that are applicable when considering statutes are equally applicable in interpreting constitutional provisions." *Russo v. APL Marine Servs., Ltd.*, 694 F. App'x 585, 586 (9th Cir. 2017) (affirming dismissal of California constitutional claim based on presumption against extraterritoriality (quoting *Morgan v. Imperial Irrigation Dist.*, 223 Cal. App. 4th 892 (2014))).

Here, Defendant argues Plaintiff's claims amount to an inappropriate extraterritorial application of California statutory and constitutional law because there is no evidence that Defendant engaged in any wrongful conduct in California. *See, e.g.*, Opp'n at 5-6. According to Defendant, the evidence shows the wrongful conduct occurred in Utah. *Id.* at 6. Plaintiff does not dispute that these claims cannot extend to extraterritorial conduct; instead, she argues Defendant is precluded from arguing that the relevant conduct occurred in Utah rather than in California. Reply at 8. Plaintiff's position hinges on the imposition of an adverse inference based on Defendant's assertion of the Fifth Amendment privilege in response to discovery requesting the circumstances of how she obtained Plaintiff's SSN. *Id.* That argument is not persuasive.

Plaintiff asks the court to make the adverse inference that Defendant wrongfully obtained Plaintiff's SSN in California. Reply at 8. Plaintiff notes that Defendant asserted the Fifth Amendment privilege in response to discovery requesting the circumstances of how she received Plaintiff's SSN. *Id.* (citing Nemiroff Decl., Ex. 3 at 6-7 (Interrogatory Nos. 9-11). These interrogatories asked Defendant (1) how she received Plaintiff's SSN, (2) to identify the person

1    and/or organization who provided Defendant with Plaintiff's SSN, and (3) to state the date she

2    first obtained Plaintiff's SSN. *Id.* As independent evidence supporting the requested inference,

3    Plaintiff relies on her own declaration, which states that she was born in Greenbrae, California in

4    2000 and was issued her SSN by the Social Security Administration shortly after her birth. *Id.*

5    (citing Wynne Decl. ¶¶ 2-3).

6        As discussed, "in a civil case, the Fifth Amendment's protections against self-

7    incrimination are invoked on a question-by-question basis . . . and therefore the assertion of the

8    privilege necessarily attaches only to the question being asked and the information sought by that

9    particular question." *Glanzer*, 232 F.3d at 1265. None of the discovery requests cited by Plaintiff

10   asked Defendant where she obtained Plaintiff's SSN. Interrogatory No. 9 comes the closest. It

11   asks Defendant to explain in detail how she received Plaintiff's SSN. Nemiroff Decl., Ex. 3 at 6.

12   However, at best, Defendant's invocation of the privilege in response to Interrogatory No. 9

13   allows the court to draw the inference that Defendant stole Plaintiff's SSN – not that she stole it in

14   a particular location. Plaintiff never asked the relevant question; therefore, "no privilege from

15   which an adverse inference could be inferred was ever asserted[.]" *Id.* at 1266.

16       In addition, Plaintiff has failed to offer the required "independent evidence" that Defendant

17   obtained Plaintiff's SSN in California. *Glanzer*, 232 F.3d at 1264. The fact that Plaintiff was born

18   in California in 2000 and was issued her SSN after her birth does not corroborate that Defendant

19   obtained Plaintiff's SSN in California. In fact, the parties agree that Defendant used Plaintiff's

20   SSN to secure a mortgage from Wells Fargo in June 2008. *See* Nemiroff Decl., ¶ 2, Ex. 1; Opp'n

21   at 1. Plaintiff's declaration is silent as to where Plaintiff resided at that time.

22       The adverse inference requested by Plaintiff amounts to "constructing an inference on

23   another inference," which the Ninth Circuit has specifically rejected. *See Glanzer,* 232 F.3d at

24   1266, n.2. Accordingly, the court declines to draw an adverse inference that Defendant obtained

25   Plaintiff's SSN in California.

26       Without this adverse inference, (and without the benefit of legal argument – if applicable –

27   about where a theft takes place if it occurs over the internet), there is a genuine dispute of fact as

28   to whether Defendant obtained Plaintiff's SSN in California, Utah, or somewhere else. Therefore,

1  a factual dispute precludes the court from making a legal determination as to whether Plaintiff
2  may assert a claim based on California statutes and the California Constitution. Accordingly,
3  Plaintiff's motion for summary judgment is denied on these claims. Because discovery is still
4  open, the court declines to grant summary judgment in Defendant's favor *sua sponte* and does not
5  reach Defendant's remaining arguments on these claims.

### 3. Violation of Privacy

Plaintiff's third claim alleges a common law violation of privacy. [Docket No. 1 ("Compl.") ¶¶ 24-29.] California's common law right of privacy protects against four torts: "(1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Eastwood v. Superior Ct.*, 149 Cal. App. 3d 409, 416 (1983). "[T]he fourth category of invasion of privacy, namely, appropriation, has been complemented legislatively by Civil Code section 3344[.]" *Id.* at 416–17.

Plaintiff's opening brief frames the invasion of privacy claim as the appropriation of Plaintiff's name and likeness. *See* Mot. at 12. Accordingly, Plaintiff must establish: (1) Defendant's use of Plaintiff's identity; (2) the appropriation of Plaintiff's name or likeness to Defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury. *Eastwood*, 149 Cal. App. 3d at 416 (citing Prosser, *Law of Torts* (4th ed. 1971) § 117, pp. 804-807).

Plaintiff argues she has met all four elements of a claim for violation of privacy. Defendant does not challenge Plaintiff's evidence; instead, she claims that Plaintiff misunderstands the "gravamen" of a claim based on misappropriation of a person's name or likeness. *See* Opp'n at 8. She argues that such a claim does not protect against identity theft, but against "public use" of a person's name or likeness without their consent. *Id.*

As Defendant points out, California's common law right of privacy that protects names and likenesses against appropriation by others is also known as the "right of publicity." *See, e.g.*, *Adriana's Ins. Servs. Inc. v. Auto Int'l Ins. Agency, Inc.*, -- F. Supp. 3d --, 2023 WL 8000227, at

11

*2 (C.D. Cal. Aug. 18, 2023); *Ross v. Roberts*, 222 Cal. App. 4th 677, 684 (2013).  Both the California Supreme Court and the Ninth Circuit have explained that the right of publicity was conceived and is most often applied to protect against the unauthorized use of celebrities' name and likeness to advertise or promote a product or service.  *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418-EMC, 2021 WL 3621837, at *3 (N.D. Cal. Aug. 16, 2021) (citing *White v. Samsung Elecs., Am., Inc.*, 971 F.2d 1395, 1396 (9th Cir. 1992), *as amended* (Aug. 19, 1992) ("The right of publicity was developed to protect the commercial interest of celebrities in their identities.  The theory of the right is that a celebrity's identity can be valuable *in the promotion of products*." (emphasis added) (quoting *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 835 (6th Cir. 1983)); *Lugosi v. Universal Pictures*, 603 P.2d 425, 431 (1979) ("[T]he so-called right of publicity means in essence that the reaction of the public to name and likeness . . . endows the name and likeness of the person involved with commercially exploitable opportunities.  The protection of name and likeness from unwarranted intrusion or exploitation is the heart of the law of privacy.")).

Plaintiff concedes that her circumstances do not fit the "paradigmatic example" of a claim for violation of privacy.  Reply at 10.  Rather, she argues, hers is the type of "non-right-to-publicity case" referenced in *White v. Samsung Elecs., Am., Inc.*, 971 F.2d 1395 (9th Cir. 1992).  *Id.*  Not so.

Plaintiff quotes the following portion of *White* to support her argument: "Even though Prosser focused on appropriations of name or likeness in discussing the right to publicity, he noted that 'it is not impossible that there might be appropriation of the plaintiff's identity, as by impersonation, without the use of either his name or likeness, and that this would be an invasion of his right to privacy.'"  *White*, 971 F.2d at 1397.  To illustrate the point, the Ninth Circuit cited several cases in which "name appropriation" and "picture or other likeness appropriation" were not directly used, but courts nevertheless found that the right to privacy was at issue because the defendant had otherwise appropriated the plaintiff's identity.  *See, e.g.*, *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir. 1974) (plaintiff's features were not visible in television commercial but defendant used photograph of the plaintiff's race car); *Carson v. Here's*

12

*Johnny Portable Toilets, Inc.*, 698 F.2d 831 (6th Cir. 1983) (defendant marketed portable toilets under brand name "Here's Johnny"—Johnny Carson's signature "Tonight Show" introduction). According to the Ninth Circuit, these cases illustrate that "[t]he right of publicity does not require that appropriations of identity be accomplished through particular means to be actionable." *White*, 971 F.2d at 1398. At issue in *White* were the different methods of appropriating a plaintiff's identity. On that question, the Ninth Circuit held "[i]t is not important *how* the defendant has appropriated the plaintiff's identify, but *whether* the defendant has done so." *Id.*

In contrast here, the issue is whether identity theft – and theft or disclosure of personal information more generally – is different from the type of conduct traditionally made unlawful by the common law right of publicity. *White* does not shed light on this question because it involved advertisements of a robot dressed to resemble a celebrity – Wheel of Fortune hostess Vanna White. Plaintiff does not cite a single case alleging a violation of privacy under facts analogous to her own.

Judge Chhabria recently weighed in on this question in *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019). The plaintiffs in that case alleged that Facebook shared their private information with third parties, such as Cambridge Analytica, and failed to prevent those third parties from selling or otherwise misusing their information. 402 F. Supp. 3d at 779-82. Judge Chhabria found these allegations were "categorically different from the type of conduct made unlawful by [California's common law right of publicity], such as using a plaintiff's face or name to promote a product or service." 402 F. Supp. 3d at 803; *see also Brooks*, 2021 WL 3621837, at \*4 (finding no violation of plaintiff's right of publicity where Thompson Reuters had collected and sold the plaintiffs' personal information – including credit information, DMV records, social-media posts, and utility records – to its customers through an online platform without plaintiffs' knowledge or consent).

For these reasons, the court denies summary judgment on Plaintiff's invasion of privacy claim. Nevertheless, discovery is still open. Although unlikely, it is still theoretically possible for Plaintiff to put forward a meritorious common law invasion of privacy claim. Accordingly, the court declines to grant summary judgment in Defendant's favor *sua sponte*.

####     4.        **Intentional Infliction of Emotional Distress**

To establish a claim for intentional infliction of emotional distress ("IIED"), Plaintiff must show "(1) extreme and outrageous conduct by [Defendant] with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) that [s]he suffer[ed] severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by [Defendant's] outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citations and quotation marks omitted). "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 1051 (citations and quotation marks omitted). "Insults, indignities, annoyances, and petty oppressions may be insufficient." *Miller v. United Parcel Serv., Inc.*, No. C 03-2405 PJH, 2004 WL 1771571, at *14 (N.D. Cal. Aug. 6, 2004) (citing *Agarwal v. Johnson*, 25 Cal. 3d 932, 946 (1979)).

Defendant argues that the IIED claim fails as a matter of law because "(1) the conduct was not directed at Plaintiff or done in her presence; (2) the conduct was not 'outrageous'; and (3) Plaintiff has not suffered the type of 'severe and extreme' emotional distress required to support a claim for intentional infliction of emotional distress." Opp'n at 12. Because the court finds that Defendant's actions do not constitute extreme and outrageous behavior on the current record, it does not reach her remaining arguments.

Plaintiff appears to argue that the fact that Defendant "stole, received and/or unlawfully obtained [her] SSN [and] recklessly used it" establishes the requisite outrageous conduct for an IIED claim. *See* Mot. at 16. In her reply brief, Plaintiff emphasizes that Defendant "committed federal and state crimes." Reply at 14.

The law does not support Plaintiff. "In determining whether a defendant's conduct rises to the level of outrageous in [the context of an IIED claim], it is 'not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *R.H. v. Los Gatos Union Sch. Dist.*, 33 F. Supp. 3d 1138, 1172 (N.D. Cal. 2014), *dismissed* (Oct. 29, 2014) (quoting Rest. 2d Torts, § 46, com. d.). Indeed, Plaintiff offers no authority to support that criminal conduct by

14

1 itself constitutes extreme and outrageous conduct.

2 While Defendant's actions may have been illegal and criminal, the current record does not establish that her conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Rest. 2d Torts, § 46, com. d.; *see, e.g.*, *Quinn v. Thomas*, No. 2:09-CV-00588-KJD, 2010 WL 3021795, at *5 (D. Nev. July 28, 2010) (relying on Restatement (Second) of Torts, holding "[t]he act of revealing private information [including the plaintiff's social security number and a summary of his criminal history] is neither extreme nor outrageous conduct"); *Deitrick v. Costa*, No. 4:06-CV-01556, 2015 WL 1606641, at *8 (M.D. Pa. Apr. 9, 2015) (citing Restatement (Second) of Torts, holding allegations of conspiracy to steal plaintiff's safe, cover up the theft, and conceal and convert the safe's contents would support civil liability for conversion and criminal charges for receipt of stolen property, but "receiving stolen property is not regarded as atrocious and utterly intolerable in a civilized community").

The court concludes that, even accepting Plaintiff's version as true, the facts offered to date do not constitute extreme and outrageous conduct. Because Plaintiff may conduct additional discovery on this claim, the court declines to grant summary judgment in Defendant's favor.

### 5. Permanent Injunction and Declaratory Relief

Plaintiff seeks a permanent injunction pursuant to her claims for violation of privacy, violation of California's Constitutional right to privacy, and IIED. *See* Compl. at 5 (prayer for relief); Mot. at 17; Reply at 2. She also seeks declaratory relief. *Id.* Both injunctive and declaratory relief are "form[s] of relief" as opposed to independent causes of action. *Logvinov v. Wells Fargo Bank*, No. 11–04772, 2011 WL 6140995, at *4 (N.D. Cal. Dec.9, 2011); *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1205 (S.D. Cal.2010) ("Injunctive relief, like damages, is a remedy requested by the parties, not a separate cause of action.") (citation and quotation marks omitted).

Because Plaintiff does not prevail on any of her claims on the current record, her request for injunctive and declaratory relief also fails. *See Preciado v. Wells Fargo Home Mortg.*, No. 13-00382 LB, 2013 WL 1899929, at *6 (N.D. Cal. May 7, 2013) (denying injunctive and declaratory

relief on motion to dismiss where plaintiff failed to state a claim).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied.

**IT IS SO ORDERED.**

Dated: February 2, 2024

_____
Donna M. Ryu
Chief Magistrate Judge

16